**TAKEMURA & COMPANY, Limited,**
**Libellant,**

**v.**

**THE S.S. TSUNESHIMA MARU, her engines, boilers, etc.,**
**and against**
**Iino Kaiun Kaisha, Ltd., Respondent.**

United States District Court
S. D. New York.
June 14, 1961.

Bigham, Englar, Jones & Houston, New York City, for libellant; James H. Simonson, New York City, of counsel.

Dunn & Zuckerman, New York City, for respondent; Morton Zuckerman, New York City, of counsel.

LEVET, District Judge.

Libellant, a Japanese corporation, moves for an order overruling respondent's exceptions to the libel herein and requiring respondent's answer to the libel to be filed within 20 days thereafter. In opposing this motion, respondent, likewise a Japanese corporation, requests that the libel be dismissed without prejudice to the commencement by the libellant of an action in the courts of Japan.

This is a libel to recover for alleged fire and breakage damage sustained by a shipment of rayon fabric, consigned to libellant, during its transportation from New York to Yokohama, Japan, aboard respondent's vessel, the S.S. "Tsuneshima Maru," a Japanese flag vessel. Jurisdiction in this district was secured by service of a monition on the New York office of respondent's general agent, which handles all business incidental to respondent's liner service between New York and Japanese ports. Respondent's agent has a claim department at New York for settlement of claims arising from shipments made aboard respondent's regularly scheduled vessels, such as the S.S. "Tsuneshima Maru."

The contract of carriage, embodying a clean bill of lading, was issued by respondent's general agent in New York to American Viscose Corporation, which, in turn, negotiated the bill to libellant for value. The bill of lading contained the following jurisdictional provision:

"25 Governing Law:—Unless otherwise herein expressly provided this Bill of Lading shall be construed by Japanese Law, and the rights of the parties thereunder determined

accordingly. Any claim for loss, damage or short delivery or otherwise arising out of this Bill of Lading shall be dealt with, at the option of the carrier, in the courts of Japan to the exclusion of proceedings in the courts of any other country." (See Affidavit of Morton Zuckerman, p. 2.)

It also appears that under the heading, "Clause Paramount" in the bill of lading, the rights of the parties are to be governed by the Fire Statute, 46 U.S.C.A. § 182, the Carriage of Goods by Sea Act (the United States version of the Hague Rules), 46 U.S.C.A. § 1300 et seq., and other American statutes limiting the carrier's liability. (See Affidavit of James H. Simonson, p. 3.)

Respondent argues that this court, in the exercise of its discretion, should decline jurisdiction of the instant libel since:

(1) The parties contracted to have the courts of Japan apply Japanese law to the issues herein.

(2) The strong balance of convenience favors relegating the parties to the Japanese courts.

(3) Enforcement of respondent's election to litigate the claim in Japan, as provided for in the bill of lading, is reasonable and appropriate in this case.

Libellant charges in substance that the jurisdictional agreement is unreasonable under the circumstances of this case. Respondent is said not to have exercised its alleged option to litigate the claim solely in the Japanese courts until the instant libel had been filed and the one-year time limitation for the suit had expired. Libellant asserts that respondent has not offered to waive this time bar, and thus its action would be dismissed if brought in a Japanese court. On the claim of inconvenience of forum, libellant maintains that respondent has failed to establish the "strong balance" in favor of a Japanese forum required for this court's declination of jurisdiction over this cause, and that circumstances favor retention of the case in the Southern District of New York.

Contractual provisions purporting to limit jurisdiction which would otherwise attach are no longer judicially regarded as void and unenforceable. Wm. H. Muller & Co. v. Swedish American Line Ltd., 2 Cir., 1955, 224 F.2d 806, 807–808, certiorari denied, 1955, 350 U.S. 903, 76 S.Ct. 182, 100 L.Ed. 793; Krenger v. Pennsylvania R. Co., 2 Cir., 1949, 174 F.2d 556, particularly Judge Learned Hand's concurring opinion at pages 560–561; Chemical Carriers, Inc. v. L. Smit & Co.'s Internationale Sleepdienst, D.C. S.D.N.Y.1957, 154 F.Supp. 886, 888. See generally, Comment, Stipulations Ousting Admiralty Courts of Jurisdiction, 28 Fordham L. Rev. 506 (1959). While courts still tend to view such agreements somewhat askance, "what remains * * is apparently no more than a general hostility, which can be overcome, but which nevertheless does persist." Krenger v. Pennsylvania R. Co., supra, 174 F.2d at page 561 (concurring opinion).

The Court of Appeals in the Muller case, supra, 224 F.2d at page 808, set forth the following criterion:

"* * * [I]n each case the enforceability of such an agreement depends upon its reasonableness. We agree with the appellant to this extent: the parties by agreement cannot oust a court of jurisdiction otherwise obtaining; notwithstanding the agreement, the court has jurisdiction. But if in the proper exercise of its jurisdiction, by a preliminary ruling the court finds that the agreement is not unreasonable in the setting of the particular case, it may properly decline jurisdiction and relegate a litigant to the forum to which he assented. Such, essentially, was our holding in Cerro De Pasco Copper Corp. v. Knut Knutsen in the case of The Geisha, 2 Cir., 187 F.2d 990. We adhere to that ruling."

Consequently, agreements which in effect place exclusive jurisdiction in a

foreign court will not be enforced by the federal courts if found to be unreasonable in themselves or in their possible effect on the rights of the litigants. Chemical Carriers, Inc. v. L. Smit & Co.'s Internationale Sleepdienst, supra, 154 F.Supp. at page 888. See also Sociedade Brasileira De Intercambio Comercial E Industrial, Ltd. v. Punta Del Este, D.C.D.N.J.1955, 135 F.Supp. 394.

 It is incumbent upon the libellant, once the existence of such an agreement is shown, to prove that it is unreasonable and hence unenforceable. Wm. H. Muller & Co. v. Swedish American Line Ltd., supra. Factors determinative of unreasonableness are similar to those involved in deciding an issue of forum non conveniens and include the availability of witnesses, Nieto v. The S.S. Tinnum, D.C.S.D.N.Y.1958, 170 F.Supp. 295, and the ability of the foreign forum to adjudicate the matter fairly, Gulf Oil Corp. v. Gilbert, 1947, 330 U.S. 501, 67 S.Ct. 839, 91 L.Ed. 1055. See also Murillo Ltd. v. The Bio Bio et al., D.C.S.D. N.Y.1955, 127 F.Supp. 13, 15, affirmed per curiam, 2 Cir., 1955, 227 F.2d 519.

██ Libellant maintains that in order to discharge its burden under the Fire Statute, 46 U.S.C.A. § 182,[1] and Section 1304(2) (b)[2] of the Carriage of Goods by Sea Act, Title 46 U.S.C.A., it will endeavor to render respondent liable for fire damage to the cargo by establishing that said loss was due to the negligence of a "shore manager" of respondent. In this connection, libellant purports to utilize evidence said to be "probably available only in New York," see Memorandum for Libellant, p. 4, through witnesses supposedly present in New York,

see Affidavit of James H. Simonson, p. 3, although the name or names of such witness or witnesses and materiality or substance of their testimony are not given.

For its part, respondent points out that the instant parties are both Japanese corporations; that the bill of lading covered cargo consigned to libellant, a Japanese corporation, and delivered to Japan aboard a Japanese flag vessel; that the alleged cargo damage was noted on the discharge of the cargo at Yokohama, Japan; and that certain documents pertinent to such damage were issued in Japan by Japanese residents. It is also argued that retention of jurisdiction here would entail proof of applicable Japanese law by expert witnesses and an attendant burden on the court to decide what Japanese law is and its application to the issues herein. Respondent also suggests that, if required, the testimony of respondent's "shore manager," apparently the only local witness involved in this case, could easily be taken by deposition upon libellant's request.

In short, respondent maintains that the balance of convenience favors a Japanese forum.

In attacking the jurisdictional agreement as unreasonable, libellant asserts that Japan has not adopted the Hague Rules and therefore might not apply the United States Carriage of Goods by Sea Act, which, with minor exceptions, follows verbatim the Hague Rules.[3] See Gilmore & Black, Law of Admiralty 124 (1957). However, no proof has been adduced by libellant to substantiate these contentions. On the other hand, respondent has submitted a legal opinion by

1. "No owner of any vessel shall be liable to answer for or make good to any person any loss or damage, which may happen to any merchandise whatsoever, which shall be shipped, taken in, or put on board any such vessel, by reason or by means of any fire happening to or on board the vessel, unless such fire is caused by the design or neglect of such owner."

2. "Neither the carrier nor the ship shall be responsible for loss or damage arising or resulting from—

 * * * * *

"(b) Fire, unless caused by the actual fault or privity of the carrier * * *."

3. It has been noted that "no country has a statute exactly like the U. S. [Carriage of Goods by Sea Act] * * *." See Gilmore & Black, Law of Admiralty 125, n. 23 (1957).

counsel, described as a member of the Japanese Bar, which states that Japan has in fact adopted the Hague Rules, albeit with express differences, and that Japanese courts have often considered these Rules in the past. Japanese counsel also maintains that "the courts of Japan would have no difficulty in applying U. S. COGA and the U. S. Fire Statute, despite the existence of Japanese legislation upon the same subject matter, even in cases where by application of Japanese domestic law a different result might be obtained." (p. 3) This counsel likewise notes that the Japanese courts will harmonize the first sentence of Clause 25 [4] in the bill of lading with the "Clause Paramount" to achieve full justice for all parties.

There is nothing to indicate that the "widespread application [of the Carriage of Goods by Sea Act, 46 U.S.C.A. § 1300 et seq.] by foreign courts in marine controversies cannot be matched by the tribunals of a maritime country such as" Japan. Murillo Ltda. v. The Bio Bio et al., supra, 127 F.Supp. at page 16.

Hence, there has been no showing that the Japanese courts would not apply the same measure of damages, or that Japanese law would deny full effect to the provisions of the bill of lading or otherwise relieve the respondent-carrier from liability in contravention of the United States Carriage of Goods by Sea Act. Nor does libellant contend that the Japanese courts are incapable of adjudicating the rights of the respective parties herein, both Japanese corporations, fairly and justly. See Wm. H. Muller & Co. v. Swedish American Line Ltd., supra, 224 F.2d at page 807; Nieto v. The S.S. Tinnum, supra, 170 F.Supp. at page 297. Compare Chemical Carriers, Inc. v. L. Smit & Co.'s Internationale Sleepdienst, supra, 154 F.Supp. at pages 888–889, wherein libellant was found to be without effective remedy in the foreign forum.

Respondent, moreover, has agreed to waive any defense of time limitation in a Japanese forum for at least three months following the disposition of this motion. (See Affidavit of Morton Zuckerman, p. 5.) Compare St. Paul Fire & Marine Ins. Co. v. The Republica De Venezuela, D.C.S.D.N.Y.1952, 105 F. Supp. 272, 274 (refusal to waive defense of limitations; jurisdiction retained), with Murillo Ltda. v. The Bio Bio et al., supra, 127 F.Supp. at page 15 (waiver of time limitation for two-month period subsequent to disposition of motion; jurisdiction declined).

Libellant does not deny that the jurisdictional agreement in the bill of lading is applicable to the claim asserted in the libel, cf. Transcontinental Commodities, Inc. v. Italnavi Societa Di Navigazione Per Azioni-Genova, D.C.S.D.N.Y.1959, 175 F.Supp. 406, 408–409, but seeks nevertheless to prevent effectuation of its prior adherence to such an agreement, "which for aught that appears was freely given * * *," Wm. H. Muller & Co. v. Swedish American Line Ltd., supra, 224 F.2d at page 808.

In the light of all the factors discussed above, therefore, it is evident that libellant has failed to sustain its burden of showing the unreasonableness of limiting litigation of the instant libel to the courts of Japan, the domicile of the parties concerned. The court is compelled to conclude that the jurisdictional agreement in the bill of lading should thus be enforced.

Accordingly, in view of all the circumstances, including respondent's agreement to waive the defense of time limitation in the Japanese forum for at least three months following the determination of this motion, the libellant's motion to overrule respondent's exceptions is denied. The exceptions are sustained, and the libel is dismissed.

Settle order on notice.

---

4. "Unless otherwise herein expressly provided this Bill of Lading shall be construed by Japanese Law, and the rights of the parties thereunder determined accordingly." (See Affidavit of Morton Zuckerman, p. 2.)